```
UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
AMY J. LURIA and ROBERT LURIA,
                                           MEMORANDUM & ORDER
                Plaintiffs,               10-CV-0537(JS)(ETB)

        -against-

HSBC Bank USA, N.A.,

                Defendant.
---------------------------------X
APPEARANCES:
For Plaintiffs:     Steven R. Schlesinger, Esq.
                    Hale Yazicioglu, Esq.
                    Jaspan Schlesinger LLP
                    300 Garden City Plaza, 5th Floor
                    Garden City, NY 11530

For Defendant:      Thomas J. Moloney, Esq.
                    Cleary Gottlieb Steen & Hamilton LLP
                    1 Liberty Plaza
                    New York, NY 10006
```

SEYBERT, District Judge

Pending before the Court are four motions: (1) Plaintiffs Amy J. Luria and Robert Luria (collectively "Plaintiffs" or the "Lurias") motion to remand this case in its entirety to the Supreme Court of the State of New York, Nassau County ("state court"); (2) Plaintiffs' motion for attorneys' fees; (3) Defendant's motion to supplement the record; and (3) Defendant's motion to change venue. For the reasons stated below, Plaintiffs' motions are DENIED, and Defendant's motions are GRANTED.

BACKGROUND[1]

The Will of Gladys C. Luria created two trusts, one each for the benefit of Amy Luria and Robert Luria. Bernard Madoff ("Madoff"), and Peter Madoff (collectively, the "Madoffs"), were appointed the trustees of those trusts. On or about July 2007, the Madoffs created two partnerships, Amy Luria Partners and Robert Luria Partners. In or about fall 2008, the Madoffs opened two accounts, one for each partnership, with Defendant HSBC Bank USA, N.A. ("HSBC"). (Pl's Mot. to Remand. Ex. A ¶¶ 4-6, 12-14, ECF No. 8.)

Thereafter, on December 11, 2008, Madoff was arrested for operating one of the largest Ponzi schemes in history. Bernard L. Madoff Investment Securities, LLC ("BLMIS"), a broker-dealer and investment advisor, was wholly owned by Madoff. See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC), 424 B.R. 122, 127 (Bankr. S.D.N.Y. 20 10).[2] On December 15, 2008, the District Court for the Southern District of New York placed BLMIS into a Securities Investor Protection Act liquidation, and appointed the Trustee for the liquidation. Id. at 126. That same day, the District Court issued an order imposing the automatic bankruptcy stay provisions of 11 U.S.C. §

---

[1] The following facts are taken from the Complaint and presumed to be true for purposes of these motions.
[2] Just over three months after being arrested, on March 12, 2009, Madoff pled guilty to an 11-count indictment, admitting that he operated a Ponzi scheme through BLMIS. Id. at 126.

2

362(a) on "any act to obtain possession of property of the estate" and "any act to create, perfect or enforce any lien against property of the estate[.]" Order ¶¶ III (C)-(D), SEC v. Madoff, No. 08-CV-10791 (S.D.N.Y. Dec. 15, 2008) ("Freeze Order"). The Freeze Order also stayed all persons from directly or indirectly transferring or otherwise disposing of any assets or property of the estate. Id. ¶ IV. On October 2, 2009, the Trustee filed a complaint against members of Madoff's family, including his brother Peter Madoff, who was BLMIS's Senior Managing Director and Chief Compliance Officer. See Compl., Picard v. Madoff, Adv. Pro., No. 09-BR-01503 (Bankr. S.D.N.Y. Oct. 2, 2009).

On March 25, 2009, the Trustee's counsel wrote to HSBC, asserting that all funds received from BLMIS in the 90-day period prior to December 11, 2008 were property of the estate and subject to the Freeze Order. Further, the letter stated that the Freeze Order applied to the accounts of Amy Luria and Amy Luria Partners LLC ("Amy Luria Partners") and that "any attempt to withdraw money from those accounts should be denied." Corsiglia Decl., Ex. B.

Around the time of Madoff's arrest, Plaintiffs sought to withdraw what they believed to be their funds from their

respective trusts.[3]  Since that time, however, in accordance with the directives of the Trustee's counsel and in attempt to avoid paying out the contents of the trusts twice, HSBC has refused to release funds from those accounts to Plaintiffs.

On December 16, 2009, Plaintiffs commenced this action against HSBC in the Supreme Court of New York, County of Nassau, pleading six state law claims for accounting, breach of contract, and conversion with respect to each of the partnerships.  (Compl. ¶¶ 26, 34, 37, 46, 54, 57.)  Essentially, Plaintiffs argue that the trusts are exempted from the stay and outside of the BLMIS estate.  Accordingly, Plaintiffs demand that HSBC return to them, individually, the funds held by those trusts.  On February 5, 2010, Defendant removed the action to this Court, pursuant to 28 U.S.C. §§ 1334, 1441, 1446 and 1442.  Defendant asserts that this Court has subject matter jurisdiction because the underlying facts render this case a core proceeding, or alternatively, "related to" the BLMIS bankruptcy case under 28 U.S.C. §§ 157, 1334(b), and 1452(a).  Pending before this Court is Plaintiffs' Motion to remand this case to state court, pursuant to 28 U.S.C. §§ 1334(c), 1452(b), and 1447(c) and Defendant's motions to supplement the record and to transfer venue pursuant to 28 U.S.C.

---

[3] Amy Luria attempted to withdraw the three hundred thousand dollars on December 5, 2008, six days prior to Bernard Madoff's arrest.  (Def's Mem. in Opp'n to Pls' Mot. to Remand. p. 4, ECF No. 10; Decl. in Supp. of Opp'n to Mot. to Remand. Ex. C-F, ECF No. 9.)  Around that same time, Robert Luria attempted to withdraw $2,000.00

§ 1412, or in the alternative § 1404(a).  For the reasons stated below, the Court DENIES Plaintiffs' motion, and GRANTS Defendant's motions.

DISCUSSION

I.  Motion to Remand

    A.  Original Jurisdiction

Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Plaintiffs argue that this case does not arise under title 11 nor is it related thereto.  Alternatively, Plaintiffs argue that, even if the Court has jurisdiction, the Court must abstain from hearing the proceeding under 28 U.S.C. § 1334(c)(2).  Finally, Plaintiffs argue that this Court should remand this case on equitable grounds pursuant to 28 U.S.C. § 1452(b).

Under the Bankruptcy Code, cases "arising under" and "arising in" title 11 are considered core proceedings.  Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir. 1987).  "Generally, a core proceeding is one that invokes a substantive right under title 11, or could only arise in the context of a bankruptcy case."  Penthouse Media Group v. Robert C. Guccione (In re Gen. Media, Inc.), 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005).  But this

does not mean that a case is only a core proceeding if it is affected by Federal law; in fact Section 157(b)(3) specifically states that "[the] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."  28 U.S.C. § 157(b)(3).

Section 157(b) provides a non-exhaustive list of matters that Congress considers core proceedings for purposes of conveying jurisdiction on the district courts, including matters "concerning the administration of the estate," "claims against the estate or exemptions from property of the estate," "proceedings to determine, avoid, or recover preferences" or fraudulent conveyances, "motions to terminate, annul, or modify the automatic stay," or "other proceedings affecting the liquidation of the assets of the estate."  28 U.S.C. § 157(b)(2)(A), (B), (F), (G), (H), and (O).  When undertaking a "core" analysis, courts should assess the degree to which the case is independent of the bankruptcy, whether the case is "unique to or uniquely affected by the bankruptcy proceedings," or the case "directly affect[s] a core bankruptcy function." Mt. McKinley Ins. Co. v. Corming Inc., 399 F.3d 436, 448 (2d Cir. 2005) (internal quotation marks and citation omitted).

At the outset of this case, the Trustee had not yet sought recovery of the partnerships' assets from the Plaintiffs.

However, as Defendant points out, on April 20, 2010, after the parties had already briefed the motion to remand, the Trustee filed adversary proceedings in the Bankruptcy Court against Amy Luria and Amy Luria Partners, and Robert Luria and Robert Luria Partners, respectively.  With respect to Amy Luria, the Trustee alleges that the $300,000 claimed by Amy Luria in this case and "on deposit in the A[my] L[uria] Partners account at HSBC is not rightfully property of either Amy Luria or AL Partners" and constitutes "fictitious profits that were withdrawn from the AL Partners BLMIS Account, and are avoidable and recoverable by the Trustee."  (A. Luria Compl. ¶ 6.)  The Trustee makes identical allegations concerning the $2,000 claimed by Robert Luria.  (See R. Luria Compl. ¶ 6.)  Finally, the Trustee has alleged that on or about June 30, 2009, the partnerships holding the accounts at HSBC both filed claims in the BLMIS liquidation, and on April 8, 2010 and April 14, 2010, respectively, Robert and Amy Luria both filed general unsecured claims in the BLMIS liquidation.  (See A. Luria Compl. ¶¶ 118, 122; R. Luria Compl. ¶¶ 117, 121.)

By arguing that this case is not a core proceeding, Plaintiffs urge this Court to misinterpret Second Circuit precedent that "'core proceedings' should be given a broad interpretation that is close to or congruent with constitutional limits as set forth in [Northern Pipeline Const. Co. v. Marathon

Pipe Line Co., 458 U.S. 50, 87, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982) (plurality)] . . . ." Mt. McKinley Ins. Co., 399 F.3d at 447 (citing In re United States Lines, 197 F.3d 631, 636 (2d Cir. 1999)). As stated above, the Court must assess the degree to which the case is independent of the bankruptcy, whether the case is "unique to or uniquely affected by the bankruptcy proceedings," or the case "directly affect[s] a core bankruptcy function." Mt. McKinley Ins. Co. v. Corming Inc., 399 F.3d 436, 448 (2d Cir. 2005) (internal quotation marks and citation omitted).

Even if the Court followed Plaintiffs' suggestion by narrowly interpreting the limits of core proceedings, the case at hand would still fall squarely within those boundaries. In reality, HSBC is simply an intermediary between two sides in the BLMIS bankruptcy; the Trustee and two creditors. The dispute between the parties in this case absolutely involves an interpretation of the Freeze Order, which sought to preserve the assets of the BLMIS estate. Plaintiffs are seeking to have their trusts exempted from estate property, and such claims are specifically defined by Section 157 as core proceedings. Moreover, the case is uniquely affected by the bankruptcy proceedings, and directly affects a core bankruptcy function; if the Court were to exempt the trusts' assets, all other creditors

in the BLMIS bankruptcy case would receive a disproportionately smaller share than these Plaintiffs.

Accordingly, this Court has original jurisdiction over this matter as a core proceeding, and it is not required to abstain from hearing the case under 28 U.S.C. § 1334(c)(2).

B.  <u>Abstention in the Interest of Justice</u>

Plaintiffs next urge the Court, even if mandatory abstention does not apply, to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).

As a general rule, federal courts should be "sparing" in their exercise of discretionary abstention.  <u>In re Texaco Inc.</u>, 182 B.R. 937, 946-47 (Bankr. S.D.N.Y. 1995), (citing <u>New Orleans Public Serv., Inc. v. Council of the City of New Orleans</u>, 491 U.S. 350, 358, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) ("Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred").  Indeed, "the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends.  They cannot abdicate their authority or duty in any case in favor of another jurisdiction."  <u>Chicot County v. Sherwood</u>, 148 U.S. 529, 534, 13 S. Ct. 695, 697-98, 37

L. Ed. 546 (1893).  The Supreme Court has described this duty as a "virtually unflagging obligation" of the federal courts to exercise their jurisdiction.  In re Texaco Inc., 182 B.R. at 947 (quoting New Orleans, 491 U.S. at 359, 109 S. Ct. at 2513; and citing Deakins v. Monaghan, 484 U.S. 193, 203, 108 S. Ct. 523, 530, 98 L. Ed. 2d 529 (1988)).

Furthermore, it is well settled that the "bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction . . . ."  In re U.S.H. Corp. of New York, 280 B.R. 330, 335 (Bankr. S.D.N.Y. 2002) (quoting In re Texaco, 182 B.R. at 947).  And with respect to comity, the Second Circuit has observed that "state courts are not entitled 'to any particular deference in interpreting federal law; the notion of comity . . . is not strained when a federal court cuts off state proceedings that entrench upon the federal domain.'"  In re Texaco, 182 B.R. at 947 (quoting In re Pan American Corp., 950 F.2d 839, 847 (2nd Cir. 1991) (other internal quotation marks and citation omitted)).

In this case, Plaintiffs have failed to establish why the general rule within the Second Circuit is inapplicable to this case.  Accordingly, the Court DENIES Plaintiffs' motion to remand the case pursuant to Section 1334(c)(1).

C.  The Court will not Remand on Equitable Grounds

Plaintiffs also argue that this suit should be remanded on equitable grounds pursuant to 28 U.S.C. § 1452(b). Section 1452(b) provides: "The court to which such a claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). In deciding whether to remand under this section, courts should consider a number of factors, including:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991).

Here, Plaintiffs have not and cannot show that the above factors weigh in their favor such that the case should be remanded on equitable grounds. In fact, all but one of the relevant factors weigh in favor of denying Plaintiffs' motion: (1) remanding this case would inhibit the efficient resolution of the bankruptcy proceeding, because the funds at issue are likely property of the BLMIS estate; (2) federal bankruptcy law, not state law predominates; (3) the state law claims asserted by

Plaintiffs are straightforward, and the law governing those claims cannot be characterized as difficult or uncertain; (4) Plaintiffs fail to identify what interest, if any, the state has in the resolution of this case; (5) as stated supra, this proceeding is directly related to the bankruptcy case, because the funds in the partnership accounts may have been assets of the estate; and (6) there are no involuntarily removed defendants that were prejudiced by removal.  The only factor that potentially weighs in Plaintiffs' favor is the sixth factor: Plaintiffs might have the right to a jury trial if the Court remanded this case to the state court, and Plaintiffs will not have the right to a jury trial if this Court continues to exercise jurisdiction and transfers this case to the Bankruptcy Court in the Southern District of New York.  Notwithstanding the sixth factor, however, the Court finds that the other factors weigh heavily in favor of denying Plaintiffs' remand motion.  Thus, this motion is DENIED.

   Because Plaintiffs' motion to remand this case is DENIED, the Court also DENIES their motion for attorneys' fees pursuant to 28 U.S.C. § 1447(c).

II.  <u>Transfer Pursuant to 28 U.S.C. § 1412</u>[4]

Because this case is properly characterized as a core proceeding, transfer under 28 U.S.C. § 1404(a) is inapplicable. Rather, as HSBC states, the proper standard for deciding Defendant's motion can be found in Section 1412.

Section 1412 states, in relevant part, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The moving party has the burden of establishing that transfer is appropriate by a preponderance of the evidence. <u>In re Manville Forest Prod. Corp.</u>, 896 F.2d 1384, 1390 (2d Cir. 1990)

To determine whether transfer is appropriate in the interests of justice the Court must evaluate six factors:

> whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed.

<u>In re Dunmore Homes, Inc.</u>, 380 B.R. 663, 671-72 (S.D.N.Y. 2008) (citing <u>In re Enron Corp.</u>, 317 B.R. 629, 638-39 (Bankr. S.D.N.Y.

---

[4] Notwithstanding the Court's application of Section 1412, the Court also finds that Defendant adequately meets its burden on Section 1404(a).

2004)).[5]  Defendant spends significant effort arguing that each of the applicable factors[6] weighs in favor of transfer.  Plaintiffs, on the other hand, do not address a single factor in their opposition.

HSBC has more than met its burden to establish that the interests of justice require transfer.  Transfer will promote the economic and efficient administration of the bankruptcy estate because the transfer would allow the court most familiar with the facts surrounding the BLMIS estate to decide the merits of Plaintiffs' claims.  As Defendant properly points out, the Bankruptcy Court is already intimately familiar with the complexities of Madoff's frauds, and the myriad claims resulting therefrom; because Plaintiffs' claims arise from those same operative facts, having the Bankruptcy Court resolve Plaintiffs' claims will result in a more efficient administration of the

---

[5] In considering the convenience of the parties, the Court must examine six different factors:

> (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result.

In re Dunmore Homes, Inc., 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008).  Because the Court finds here that transfer is appropriate in the interests of justice, it need not decide whether all of the above factors warrant transfer for the convenience of the parties.

[6] The parties' ability to receive a fair trial in each of the possible venues and the enforceability of any judgment rendered in either venue is not at issue in this case.  Accordingly, the Court only examines the other factors herein.

BLMIS estate.  See Norkin v. DLA Piper Rudnick Gray Cary, LLP, No. 05-CV-9137, 2006 WL 839079, at *6 (S.D.N.Y. Mar. 31, 2006).

Additionally, the interests of judicial economy would be well served by the transfer.  Despite their unconvincing statements to the contrary, Plaintiffs urge this Court, or the state court, to waste valuable resources by relearning and rehashing many of the intricate details of the BLMIS bankruptcy that the Bankruptcy Court has already examined.  More importantly, Plaintiffs seek more favorable treatment by this Court or the state court than they will receive as creditors of the BLMIS estate.  But Plaintiffs' desire to achieve conflicting judgments is not a reason to deny Defendant's transfer motion.

The bankruptcy court also has an interest in deciding the merits of Plaintiffs' claims within the Southern District. The bankruptcy court's role is to equitably distribute the assets of the BLMIS estate within the constraints of the Bankruptcy Code.  Adjudicating Plaintiffs' claims outside the bankruptcy court would thwart this interest, because it would allow Plaintiffs to receive more favorable treatment than other, similarly situated creditors.  Finally, Plaintiffs' original choice of forum does not warrant denying HSBC's motion because "[t]he weight normally attached to the [Plaintiffs'] choice of forum is effectively cancelled out . . . by the presumption that

15

the proceedings should be heard in the same district as the underlying bankruptcy." Norkin, 2006 WL 839079, at *6 (internal quotation marks, alterations and citation omitted).  Moreover, Plaintiffs have already filed a proof of claim in the bankruptcy proceeding.  And while they try to downplay the significance of these actions, the Court finds that Plaintiffs' familiarity with the bankruptcy court also weighs in favor of transfer.  See Lothian Cassidy LLC v. Ransom, 428 B.R. 555, 562 (Bankr. E.D.N.Y. 2010); see also Marathon, 458 U.S. at 84 n.36, 102 S. Ct. at 2878 n.36 ("Of course, bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjusted, are matters of federal law."); In re Manville Forest Products Corp., 896 F.2d 1384, 1389-90 (2d Cir. 1990) ("Gulf, unlike the defendant in Marathon, is not a third party related only peripherally to the adjudication of [the debtor's] bankruptcy case.  The determination of the objection to and allowance of its claim is clearly within the traditional core jurisdiction of the bankruptcy court."); In re Bar M Petroleum Co., 63 B.R. 343, 346 (Bankr. W.D. Tex. 1986) ("By filing proof of claim, Defendant has become a party in interest in the Chapter 11 case and is asserting a right to participate in the distribution under the Debtor's Plan.  Section 157(b)(2)(B) lists the allowance or disallowance of claims against the estate as

core proceedings, and 11 U.S.C. § 502(b) requires the [Bankruptcy] Court to determine the amount of a claim where the claim has been objected to."); In re Lion Capital Group, 46 B.R. 850, 860 (Bankr. S.D.N.Y. 1985) ("Adjustment of claims against an estate has been and remains central to bankruptcy proceedings.").

The Court finds that the above-mentioned factors weigh in favor of transfer; accordingly, HSBC's motion is GRANTED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions to remand and for attorneys' fees are DENIED, and both of Defendant's motions are GRANTED. Accordingly, the Clerk of the Court is directed to transfer this case to the Southern District of New York, and mark this matter CLOSED.


                                    SO ORDERED.

                                    /s/ JOANNA SEYBERT_____
                                    Joanna Seybert. U.S.D.J.


Dated:    September 3, 2010
          Central Islip, New York